## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Brian Dalton; New England Firearms Academy, Inc.; John Troisi; Big Jack's Auto Service and Towing, on behalf of themselves and a class of similarly situated persons,<br><br>                          Plaintiffs,<br><br>      v.<br><br>Yvonne Hao, in her official capacity as Secretary of the Executive Office of Economic Development; Massachusetts Growth Capital Corporation; and Lawrence D. Andrew, in his official capacity as President and CEO of Massachusetts Growth Capital Corporation,<br><br>                        Defendants. | No.: 1:23-cv-11216-WGY |

## MEMORANDUM IN SUPPORT OF THE MOTION BY THE BLACK ECONOMIC COUNCIL OF MASSACHUSETTS AND AMPLIFY LATINX FOR <u>LEAVE TO INTERVENE</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................1

INTRODUCTION ..............................................................................................................1

BACKGROUND ...............................................................................................................2

    A.  COVID-19 Pandemic and Relief Programs .......................................................2

    B.  The Inclusive Recovery Grant Program ...........................................................5

    C.  This Litigation...............................................................................................6

ARGUMENT ...................................................................................................................8

    I.     Proposed Intervenors Are Entitled to Intervene as of Right in this Action .........8

    A.  The Motion to Intervene is Timely ..................................................................8

    B.  Proposed Intervenors Have Direct Interests in this Case....................................10

    C.  A Disposition in Plaintiff's Favor Would Impede Their Ability to Effectuate Their Interest ...................................................................................................12

    D.  Defendants Do Not Adequately Represent Proposed Intervenors' Interests ..................13

    II.    Alternatively, the Court Should Grant Permissive Intervention .......................16

CONCLUSION................................................................................................................17

CERTIFICATE PURSUANT TO LOCAL RULE 7.1(A)(2).......................................................18

CERTIFICATE OF SERVICE .............................................................................................18

TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*AGC, San Diego v California Department of Transportation*,
713 F3d 1187 (9th Cir. 2013) ...........................................................................12

*B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006) .............................................................................14

*Banco Popular de Puerto Rico v. Greenblatt*,
964 F.2d 1227 (1st Cir. 1992) .............................................................................9

*Black Fire Fighters Association of Dallas v. City of Dallas, Tex.*,
19 F.3d 992 (5th Cir. 1994 ................................................................................12

*Boston Parent Coalition for Academic Excellence Corp v. Boston School Committee*,
No. 21-10330-WGY, 2021 WL 4489840 (D. Mass. October 1, 2021) ........................12

*Conservation Law Foundation of New England, Inc. v. Mosbacher*,
966 F.2d 39, 44 (1st Cir. 1992) ....................................................................13, 16

*Contractors Ass'n of Eastern PA v. City of Philadelphia*,
945 F2d 1260 (3d Cir. 1991) ............................................................................12

*Converse Const. Co., Inc. v. Massachusetts Bay Transp.*,
899 F.Supp.753 (1st Cir. 1995) ..........................................................................12

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement*,
219 F.3d 31 (1st Cir, 2000) ...........................................................1, 11, 12, 14, 15

*Daggett v. Comm'n on Gov. Ethics & Election Practices*,
172 F.3d 104 (1st Cir. 1999) .......................................................................13, 17

*Deleo v. City of Boston, Mass.*,
No. 03-12538-PBS, 2004 WL 570819 (D. Mass. Nov. 23, 2004) ..............................12

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) ............................................................................12

*Johnson v. San Francisco Unified Sch. Dist.*,
500 F.2d 349 (9th Cir. 1974) ............................................................................12

*Lujan v. Defenders of Wildlife, et al.,*
504 U.S. 555, (1992) ................................................................................................16

*McDonough v. City of Portland,*
No. 2:15-cv-00153-JDL, 2015 WL 3755289 (D. Maine. June 16, 2015) ....................................14

*Public Service Co. of N.H. v. Patch,*
136 F.3d 197 (1st Cir. 1998) ................................................................................10, 13

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.,*
584 F.3d 1 (1st Cir. 2009) ................................................................................8

*State v. Director, U.S. Fish and Wildlife Serv.,*
262 F.3d 13, 19 (1st Cir. 2001) ................................................................................13

*Ungar v. Arafat,*
634 F.3d 46 (1st Cir. 2011) ................................................................................8

## <u>Rules</u>

Federal Rule of Civil Procedure 24(a) ..............................................1, 8, 10, 11, 12, 17

Federal Rule of Civil Procedure 24(b) ..............................................2, 16, 17

## INTRODUCTION

By this motion, the Black Economic Council of Massachusetts and Amplify Latinx (the "Proposed Intervenors") respectfully request that the Court allow them to intervene as defendants in this lawsuit.  This action challenges the State Defendants'[1] implementation of the Inclusive Recovery Grant Program ("Grant" or "Grant Program"), a part of the State's $3.8 billion COVID-19 relief bill signed into law in November 2022.  The Grant Program is intended to provide relief to a wide variety of small businesses impacted by the pandemic, including businesses that focus on reaching under-served markets, minority- women- and veteran-owned businesses, and immigrant and first-generation owned businesses.  The Proposed Intervenors represent the interests of Black- and Latinx-owned businesses across the Commonwealth, who are among the businesses the Grant Program seeks to assist.

Proposed Intervenors meet the requirements of Federal Rules of Civil Procedure 24(a)(2) for intervention as of right.  *See infra* at 8. The motion is timely, as it is brought in the very earliest stages of litigation before any substantive proceedings have occurred.  Proposed Intervenors have a direct interest in the litigation because Plaintiffs seek to remove from the Grant Program's eligibility criteria any focus on the minority-owned businesses that Proposed Intervenors represent.  An unfavorable outcome in the litigation would prejudice Proposed Intervenors' ability to protect that interest.  *See Cotter v. Massachusetts Ass'n of Minority Law Enforcement*, 219 F.3d 31, 37 (1st Cir. 2000).  Moreover, State Defendants will not adequately represent Proposed Intervenors' interests. The State has a long and unfortunate history of failing to act in the interest of minority-owned businesses, including misrepresenting or overstating its efforts to ensure equity

---

[1] The Defendants are Yvonne Hao in her official capacity as Secretary of the Executive Office of Economic Development; Massachusetts Growth Capital Corporation; and Lawrence D. Andrew in his official capacity as President and CEO of the Massachusetts Growth Capital Corporation.

and inclusion for such businesses.  *See infra* at 14. Events subsequent to the filing of this lawsuit have only heightened Proposed Intervenors' concerns: immediately after the lawsuit was filed, State Defendants entered into a Joint Stipulation with Plaintiffs to stay the litigation for 60 days and delay distribution of grants during this period.  *See* ECF No. 22.  Defendants also agreed in that Stipulation that they would "review [] the criteria for applying for and/or receiving a grant under the Inclusive Recovery Grant Program…."  *Id.* at 2.  State Defendants' willingness to delay the grant of much-needed funding while they consider conceding to Plaintiffs' demands is of grave concern to Proposed Intervenors-and exemplifies the longstanding divergence of interest that supports intervention.

For all of the same reasons, permissive intervention under FRCP 24(b) is also proper. Accordingly, Proposed Intervenors respectfully request that they be allowed to intervene in this matter to protect the interests of minority-owned businesses.

## BACKGROUND

### A.  COVID-19 Pandemic and Relief Programs

Since the start of the COVID-19 pandemic, the federal government and the Commonwealth have poured billions of dollars into relief efforts, in an attempt to mitigate the effects of the pandemic.  Funds have been directed to many different entities, including individuals and families, employers, and businesses.[2]  As the pandemic has progressed and gaps in aid have become apparent, new funding streams have been created to ensure that assistance reaches a broad cross-section of individuals and businesses.  Communities of color have been particularly hard hit by the

---

[2] *See generally* U.S. Dep't of the Treasury, COVID-19 Economic Relief, https://home.treasury.gov/policy-issues/coronavirus (last visited July 17, 2023); Commonwealth of Massachusetts, Coronavirus Relief Fund, https://www.mass.gov/info-details/coronavirus-relief-fund-cvrf (last visited July 17, 2023).

pandemic, experiencing higher infection and mortality rates, and more hospitalizations.[3] Communities of color have also suffered disproportionately from an economic perspective.  For example, in the early months of the pandemic, the closure rate for Black-owned businesses and Latinx-owned businesses was 41% and 32%, respectively, compared to 17% for white owned businesses.[4]  And since the onset of the pandemic, Black- and Latinx-owned businesses have experienced significantly greater earnings losses compared to other business owners.[5]

In the early days of the pandemic, then-Massachusetts Governor Charlie Baker issued an emergency shelter-at-home order, effective March 24, 2020,[6] requiring the closure of any business that was not providing an essential service.[7]  The Commonwealth instituted a phased reopening plan for non-essential businesses that began late May 2020.  The reopening was contingent on the type of business operation, leaving some businesses closed for two to three months.

---

[3] Whitney S. Brakefield et al., *Social Determinants and Indicators of COVID-19 Among Marginalized Communities: A Scientific Review and Call to Action for Pandemic Response and Recovery*, NAT'L. LIBR. OF MEDICINE (May 2, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9237492/; Simon Rios, *For Non-English Speakers, Difficult Language Barriers Become Dire Amid Outbreak,* WBUR (April 7, 2020), *available at* https://www.wbur.org/news/2020/04/07/coronavirus-translation-problems; Beatriz C. Dominquez et al., *A Survey of Public Health Failures During COVID-19*, NAT'L. LIBR. OF MEDICINE (December 12, 2022), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9833812/; Jacob Bor et al., *Inequities in COVID-19 vaccine and booster coverage across Massachusetts ZIP codes after the emergence of Omicron: A population-based cross-sectional study*, PLOS MEDICINE (January 31, 2023), https://journals.plos.org/plosmedicine/article?id=10.1371/journal.pmed.1004167.
[4] Boston Indicators, *The Color of the Capital Gap: Increasing Capital Access for Entrepreneurs of Color in Massachusetts*, (May 2021), https://www.bostonindicators.org/-/media/indicators/boston-indicators-reports/report-files/capitalgap052020211458.pdf.
[5] U.S. Small Bus. Admin., *The Impacts of COVID-19 on Racial Disparities in Small Business Earnings* (August 16, 2022*)*, https://advocacy.sba.gov/wp-content/uploads/2022/08/Report_COVID-and-Racial-Disparities_508c.pdf.
[6] *See* Commonwealth of Mass.-Off. of the Governor, *COVID-19 Order No. 13*, (March 23, 2020), https://www.mass.gov/doc/march-23-2020-essential-services-and-revised-gatherings-order/download.
[7] *See* Commonwealth of Mass.-Off. of the Governor, Exhibit A to *COVID-19 Order No. 13*, (March 23, 2020), https://www.mass.gov/doc/covid-19-essential-services/download.

To assist businesses and prevent permanent closures, the federal government and the Commonwealth initiated a number of grant and loan programs. For example, as part of the American Rescue Plan Act, the U.S. Department of the Treasury's State Small Business Credit Initiative (SSBCI) funded several Massachusetts loan programs for small businesses in the Commonwealth.[8] Additionally, several emergency grant programs were implemented by state and local governments to assist small businesses. For example, Community Development Block Grant funding went to 23 Massachusetts communities to assist microbusinesses that met specific federal criteria.[9]

In the same way that the pandemic disproportionately affected certain communities, these relief programs have not always reached all communities equally. For example, under the federal Paycheck Protection Program ("PPP"), a $659 billion forgivable loan program for small businesses,[10] 79% of white business owners nationally received the full amount requested, while only 61% of Latinx-owned businesses and 43% of Black-owned businesses received the same.[11]

As the pandemic continued its course, the federal government and the Massachusetts Legislature continually directed funds to a wide range of recipients, while at the same time

---

[8] These include: Massachusetts Growth Capital Corp. Commercial Lending Program, Massachusetts Growth Capital Corp. Community Loan Fund Guarantee Program, MassDevelopment Economically Distressed Area (EDA) Loan Enhancement & Equipment Program, MassDevelopment Loan Guarantee Program, and MassVentures Deep Tech Diversity Venture Fund, *See* U.S. Dep't of the Treasury, https://home.treasury.gov/policy-issues/small-business-programs/state-small-business-credit-initiative-ssbci/capital-program-list-of-programs-and-contacts, (last visited July 1, 2023).

[9] *See e.g.,* City of Woburn, Massachusetts, https://www.woburnma.gov/news/2020/07/upcoming-financial-assistance-program-for-microenterprises-in-woburn-2/, (last visited July 1, 2023).

[10] *See* U.S. Dep't of the Treasury, https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program, (last visited July 17, 2023).

[11] *See* Boston Indicators, *The Color of the Capital Gap: Increasing Capital Access for Entrepreneurs of Color in Massachusetts*, (May 2021), https://www.bostonindicators.org/-/media/indicators/boston-indicators-reports/report-files/capitalgap052020211458.pdf.

ensuring that funds were targeted to reach sectors of particular need.[12]

### B. The Inclusive Recovery Grant Program

The Inclusive Recovery Grant Program that Plaintiffs challenge in this action is part of a $3.8 billion appropriation that was made in November 2022. The $153 million in funds for the Grant Program is supported by an award to the Commonwealth from the U.S. Department of the Treasury and was appropriated by the Legislature and approved by the Governor as part of an Economic Development Bill "to support small businesses negatively impacted by the 2019 novel coronavirus pandemic…."[13] Of the $153 million appropriated, $75 million is earmarked for hotels that have not previously received assistance; $3 million is allocated for small movie theaters; $30 million is allocated for small businesses with no more than 50 employees; and $45 million is allocated for "(1) businesses that focus on reaching underserved markets; (2) minority-owned, women-owned and veteran-owned businesses; and (3) immigrant and first generation owned businesses…." *Id.* The law does not require that any set amount, or any funds at all, be allocated to minority-owned businesses specifically. *Id.* The law specifies that all of these grant monies are to be distributed "in a geographically equitable manner…." *Id.*

The Executive Office of Economic Development and Massachusetts Growth Capital Corporation are responsible for implementation of the Program.[14] Applications for the Inclusive Recovery Grant Program opened on March 31, 2023 and closed on April 28, 2023.[15]

---

[12] *See*, *e.g.*, U.S. Small Bus. Admin., https://www.sba.gov/funding-programs/loans/covid-19-relief-options/shuttered-venue-operators-grant, (last visited July 17, 2023) (Shuttered Venue Operators Grant to assist live venue operators and museums).

[13] An Act relating to economic growth and relief for the Commonwealth. 2022 Mass. Acts 268. 10 November 2022; Line Item 1599-6062.

[14] *Id.*

[15] Massachusetts Growth Capital Corporation, https://www.empoweringsmallbusiness.org/covid-19-recovery/inclusive-recovery-grant-program, (last visited July 17, 2023).

### C.  This Litigation

Plaintiffs' original complaint was filed on May 31, 2023.  ECF No. 1.  On June 2, 2023, Plaintiffs filed an amended complaint, adding additional plaintiffs.  ECF No. 5. The amended complaint challenges the Grant Program's eligibility criteria on Equal Protection grounds and seeks declaratory relief and an injunction to stop State Defendants from implementing what it describes as "eligibility preferences" for "minority-owned, women-owned, and LGBTQ+-owned businesses."  *Id.*, Prayer for Relief.  The lawsuit does not seek invalidation of the law itself, nor does it challenge the other categories of business that are the focus of the law (*i.e.*, businesses that focus on reaching underserved markets, veteran-owned businesses, and immigrant and first generation owned businesses).

On June 8, 2023, Plaintiffs filed a motion for a preliminary injunction and a temporary restraining order to prohibit disbursement of Grant funds.  ECF No. 15.  On June 16, 2023, the Parties filed a Joint Stipulation and Motion To Stay Proceedings for 60 days.  ECF No. 22.  In the Stipulation, the parties agreed that Defendants would not make funding decisions during the stay. *Id*.  Defendants also represented that they "intend[ed] to conduct a review of the criteria for applying for and/or receiving a grant" under the Grant Program.  *Id.* ¶4.  The Court subsequently granted the stay and administratively closed the case for 60 days.  *See* ECF No. 27.

### PROPOSED INTERVENORS

**BLACK ECONOMIC COUNCIL OF MASSACHUSETTS (BECMA)** is a non-profit organization whose mission is to advance the economic well-being of Black businesses and organizations that serve the Black community and Black residents of Massachusetts. *See* Declaration of Nicole Obi on behalf of BECMA ("Obi Dec."), attached as Ex. A, at ¶ 3.  BECMA is a membership organization that includes Black-owned businesses, Black students and Black

professionals with ally partnerships that bolster BECMA's mission. *See id.* at ¶ 4. BECMA advances its mission by convening important conversations that seek solutions to persistent racial and economic issues; advocating on behalf of its business members at the state and local levels for policies that help grow and sustain the Black economy; and connecting its members to business opportunities in the public and private sectors. *See id.* at ¶ 5. BECMA expends significant time and resources advocating for policies that would increase investment in minority-owned businesses. *See id.* at ¶ 7. As part of the Commonwealth's FY2021 Budget, money was appropriated for BECMA to implement small business support[16] evidencing their commitment to economic sustainability for Black-owned businesses and their knowledge of the benefits of grant programming. *See id.* at ¶ 9.

**AMPLIFY LATINX** is a non-profit organization that creates visibility for Latinx-owned businesses, facilitates connections for these businesses to existing resources and champions continual economic mobility for the Latinx community. *See* Declaration of Eneida Roman on behalf of Amplify Latinx ("Roman Dec."), attached as Ex. B, at ¶ 2. Through partnerships with multi-stakeholder coalitions, Amplify Latinx advocates for policies that prioritize Latinx-owned businesses and for full participation of Latinos in decision-making roles to advance economic and political equity. *See id.* at ¶ 4. Amplify Latinx provides technical assistance, education, and information on contracting opportunities to its network of Latinx-owned businesses. *See id.* at ¶ 3. The Latinx Business Advancement program offered by Amplify Latinx provides personalized business coaching by providing connections to existing resources, assisting with increasing

---

[16] An Act making appropriations for the fiscal year 2021 for the maintenance of the departments, boards, commissions, institutions and certain activities of the Commonwealth, for interest, sinking fund and serial bond requirements and for certain permanent improvements. 2020 Mass. Acts 227. 11 December 2022; Line Item 7002-0040.

visibility, and advocating for access to capital in support of its mission to promote and advance Latinx-owned businesses. *See id.* at ¶ 5. Amplify Latinx will be required to expend additional resources into supporting these businesses if legislative efforts such as the Inclusive Recovery Grant Program are changed to remove any focus on minority-owned businesses. *See id.* at ¶¶ 7, 8.

**ARGUMENT**

### I.    The Proposed Intervenors Are Entitled to Intervene as of Right in this Action

Based on the requirements of Federal Rule of Civil Procedure 24(a)(2), the Proposed Intervenors are entitled to intervention as of right.

Under Rule Federal Rule 24(a)(2), the First Circuit has articulated a four-part analysis for assessing intervention as of right. The analysis includes: (1) "its motion is "timely;" (2) "it has an interest relating to the property or transaction" at issue; (3) "disposition of the action threatens to impair or impede its ability to protect this interest; and" (4) "no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). The Proposed Intervenors satisfy each of the four factors to meet the standard for intervention as of right.

#### A.  The Motion to Intervene is Timely

As the First Circuit has held, analyzing the timeliness of a motion to intervene "is inherently fact-sensitive and depends on the totality of the circumstances…." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) (internal quotations omitted). "[T]he status of the litigation at the time of the request for intervention is 'highly relevant.'" *Id.* Other factors include how long the proposed intervenor "knew or reasonably should have known that its interest was imperilled before it moved to intervene" and whether there is any "foreseeable prejudice to existing parties if intervention is granted" or foreseeable prejudice to the proposed intervenor if

intervention is denied. *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992).

As to the "highly relevant" factor of the status of the litigation at the time that intervention is requested, the lawsuit here is in its very earliest stages. Plaintiffs' complaint was filed on May 31, 2023, and an amended complaint was filed on June 2, 2023. Plaintiffs moved for a preliminary injunction on June 8, 2023, *see* ECF No. 15, and the parties subsequently filed a joint stipulation and motion to stay proceedings on June 16, 2023. *See* ECF No. 22. The Court granted that stay on June 20, 2023 and administratively closed the case for 60 days. *See* ECF No. 27. Proposed Intervenors notified the parties of their intent to move to intervene on July 13, 2023 and filed their motion shortly thereafter. Based on this very early stage of the proceedings, the motion is clearly timely. *See Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 64-65 (1st Cir. 2008) (intervention as of right allowed based on the early stage of litigation where only matter pending was conference for competing injunction proposals; no discovery or substantive legal proceedings had taken place).

Other factors support the timeliness of the motion as well. Proposed Intervenors became aware of the lawsuit shortly after it was filed and have promptly moved to intervene. There is no prejudice to the existing parties because no substantive proceedings have occurred and the case has been administratively stayed, meaning that granting intervention would cause no delay. And, as explained further below, s*ee infra* at 12, Proposed Intervenors would be substantially prejudiced if the matter were allowed to proceed without their participation. Based on the factors for timeliness articulated by the First Circuit, this Motion is timely.

**B.  Proposed Intervenors Have Direct Interests in this Case**

Proposed Intervenors also satisfy the second factor of the Rule 24(a)(2) test, because Proposed Intervenors have an interest relating to the property or transaction at issue.

The First Circuit has explained that a movant need only show that "it has a significantly protectable interest…that is direct, not contingent." *Public Service Co. of N.H. v. Patch,* 136 F.3d 197, 205 (1st Cir. 1998) (internal quotations omitted).  Here, Proposed Intervenors' interest in this litigation is direct.  Proposed Intervenor BECMA's mission is to advance the economic well-being of Black businesses and organizations that serve the Black community and Black residents of Massachusetts and assists its members with resource identification such as opportunities for capital growth and attainment of sustainability.  *See* Obi Dec. at ¶¶ 3, 5.  Membership includes Black-owned businesses that are eligible for the Grant Program based on the current criteria.   *See* Obi Dec. at ¶ 8.  On behalf of its business members, BECMA expends significant time and resources advocating for policies such as the Grant Program being challenged, in order to grow and support Black businesses.  *See id.* at ¶ 7.  Maintaining economic opportunities for Black businesses is central to the mission of BECMA in advancing the economic well-being of Black-owned businesses and sustaining the Black economy.

Proposed Intervenor Amplify Latinx is similarly engaged on behalf of the Latinx community, with numerous programs focused on increasing growth and economic opportunity for Latinx-owned businesses in the state.  Amplify Latinx facilitates connections to existing resources, champions economic mobility and advocates for policies that prioritize the Latinx community.  *See* Roman Dec. at ¶¶ 2, 4.  Its Latinx Business Advancement Program utilizes

coaching to assist businesses with maintaining healthy finances and accessing capital. *See* Roman Dec. at ¶ 5. Enjoining the Grant program criteria, as requested by the Plaintiffs, *see* ECF No. 15, will impact Latinx-owned businesses directly by limiting opportunities for capital advancement, frustrating Amplify Latinx's efforts to ensure that the needs of Latinx-owned businesses are met. *See* Roman Dec. at ¶¶ 7, 8. Amplify Latinx will suffer injury if there is an unfavorable ruling. *See id*. at ¶¶ 7, 8.

As the First Circuit has recognized, in cases such as this one where governmental eligibility criteria are challenged, organizations whose constituencies are among the beneficiaries of a program have a "protectable interest" in continuation of those criteria. *See Cotter*, 219 F.3d at 37 (noting that cases involving such programs "do not always neatly fit the model of a discrete common law action between a plaintiff and a defendant."). In *Cotter*, the First Circuit allowed the Massachusetts Association of Minority Law Enforcement Officers (MAMLEO) to intervene in a challenge to promotion criteria of the Boston Police Department, which the Plaintiffs alleged violated white officers' constitutional rights. Reversing the district court, the First Circuit found that because "the decision may be likely to control an ongoing process" and therefore "predictably affect the interest" of others who might avail themselves of the challenged program, the "protectable interest" prong of Rule 24(a) was satisfied. *Id.*

Similar to *Cotter*, Proposed Intervenors here seek to protect the interest of minority-owned businesses by ensuring the Grant Program is implemented as the Legislature intended: with a focus that includes minority-owned businesses as one of many targeted beneficiaries. In similar contexts, courts have frequently recognized that intervention is appropriate when minority-

business programs are challenged[17], as well as in similar employment[18] and education contexts.[19]

Proposed Intervenors have an interest in safeguarding the criteria for the Grant funding designed to include businesses owned by historically marginalized communities and the prevention of setting precedent for future grant implementation.  *See Cotter,* 219 F.3d at 37 (noting that an interest for an organization as intervenor exists where the court's decision could control ongoing processes of the Department).  This interest satisfies the second factor of the Rule 24(a)(2) test.

### C. A Disposition in Plaintiffs' Favor Would Impede Proposed Interevnors' Ability to Effectuate Their Interests

For the same reasons that Proposed Intervenors' interest in continuation of the Grant Program as the Massachusetts Legislature intended is a protectible interest, their ability to protect that interest would be impaired by an unfavorable disposition.  *See Converse Const. Co., Inc. v. Massachusetts Bay Transp.,* 899 F.Supp. 753, 759 (D. Mass. 1995) (approval of Plaintiff's preliminary injunction to prevent award of public contracts with minority-owned business component would have a harmful effect on minority-business intervenors).  The relief that Plaintiffs request includes a preliminary and permanent injunction, enjoining Defendants "from implementing or giving any effect to the [Grant Program's] eligibility preferences for minority-

---

[17] *See Converse Const. Co., Inc. v. Massachusetts Bay Transp.,* 899 F.Supp. 753, 759 (D. Mass. 1995); *AGC, San Diego v. California Department of Transportation,* 713 F.3d 1187, 1193 (9th Cir. 2013); *Contractors Ass'n of Eastern PA v. City of Philadelphia,* 945 F.2d 1260 (3d Cir. 1991), *summary judgment for Plaintiffs aff'd,* 91 F.3d 586 (3d. Cir. 1996).

[18] *See Deleo v. City of Boston, Mass.,* No. 03-12538-PBS, 2004 WL 5740819 (D. Mass. Nov. 23, 2004); *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers,* 219 F.3d 31 (1st Cir. 2000), *aff'd,* 323 F.3d 160 (1st Cir. 2003); *Black Fire Fighters Association of Dallas v. City of Dallas, Tex.,* 19 F.3d 992, 994-995 (5th Cir. 1994).

[19] *See Boston Parent Coalition for Academic Excellence Corp v. School Committee of the City of Boston,* 996 F.3d 37 (1st Cir. 2021); *Johnson v. San Francisco Unified Sch. Dist.,* 500 F.2d 349 (9th Cir. 1974); *Grutter v. Bollinger,* 188 F.3d 394 (6th Cir. 1999), *reversed and remanded on other grounds,* 539 U.S. 244 (2003).

owned, women-owned, and LGBTQ+ businesses." FAC, Prayer for Relief (b). While Proposed

Intervenors do not agree with Plaintiffs' characterization of the challenged program as providing

"preferences" to minority-owned businesses, it is nonetheless clear that an unfavorable outcome

of this litigation would remove a focus on minority-owned businesses that the Legislature enacted.

Maintaining equitable access to grant funding for these businesses is a direct interest the Proposed

Intervenors seek to protect. An unfavorable resolution of this action would run directly counter to

that interest.

### D. Defendants Do Not Adequately Represent Proposed Intervenors' Interests

Even though litigation in this case is in its early stages, the Proposed Intervenors can

already demonstrate that their interest will not adequately be protected by Defendants, therefore

meeting the fourth requirement for intervention as of right. Indeed, as the First Circuit has

observed, a would-be intervenor "need only show that representation *may* be inadequate, not that

it is inadequate." *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39,

44 (1st Cir. 1992) (emphasis added).

Although when the government is defending a statute, it is "presumed" to be doing so

"adequately," *Daggett v. Comm'n on Gov. Ethics & Election Practices*, 172 F.3d 104, 111 (1st

Cir. 1999), that "'Presumption' means no more in this context than calling for an adequate

explanation as to why what is assumed—here, adequate representation—is not so." *State v.

Director, U.S. Fish and Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). "The facts of these cases

vary greatly and whether the proposed intervenors' explanation of inadequacy suffices must be

determined 'in keeping with a commonsense view of the overall litigation.'" *Id.* (quoting *Patch*,

136 F.3d at 204).

Courts that have granted intervention in similar contexts have frequently noted that the interests of beneficiaries are not necessarily adequately represented by governmental defendants. *See Cotter,* 219 F.3d at 35-36 (noting that there may be enough likelihood of conflict or divergence of interests to question the adequacy of representation by a government party); *see also B. Fernandez & Hnos, Inc. v. Kellogg USA, Inc*., 440 F.3d 541, 546 (1ˢᵗ Cir. 2006) ("One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party.") (citation omitted).  As government and quasi-government entities, the State Defendants' interests differ in kind and degree from the Proposed Intervenors.  The varying governmental interests of Defendants, including "'institutional and political pressures,'" may not align with the interests of minority business owners with financial interests at stake. *See McDonough v. City of Portland,* No. 2:15-cv-00153-JDL, 2015 WL 3755289 at *3-4 (D. Me.  2016) (noting that the spectrum of governmental interests that must be accounted for by an agency are far broader than the protection of commercial interests by proposed intervenors).

In fact, the State here has a long and unfortunate history of failing to ensure equal opportunity for minority-owned businesses, including affirmatively concealing the depth and breadth of that failure.  For example, a 2017 study commissioned by the State's Division of Capital Asset Management and Maintenance (DCAMM) found that the State was extensively under-utilizing minority-owned businesses on State projects compared to their availability to do the type of work needed.[20]  The State's failure to utilize minority-owned businesses has in fact been getting

---

[20] *See* NERA Economic Consulting, *Business Disparities in the DCAMM Construction and Design Market Area: Prepared for the Commonwealth of Massachusetts Division of Capital Asset Management and Maintenance*, (December 22, 2017) https://www.mass.gov/files/documents/2017/12/29/business-disparities-in-the-dcamm-construction-and-design-market-area-study.pdf.

worse over time, with an estimated 24% less in inflation-adjusted dollars going to such businesses in 2018 as compared to 1998.[21]

Moreover, the State has concealed the true extent of these failures, by over-inflating the data it reports on minority-business engagement.  For example, in public reports on minority-business participation on State contracts, the State has improperly included funds disbursed to non-profit organizations.[22]  It has also engaged in other questionable practices in reporting the extent of minority-business participation, such as including "goods and services that may have nothing to do with a government contract," including businesses that are "outside Massachusetts… or appear to barely exist at all."[23]

In light of the State's failure to take inclusion of minority-owned businesses seriously, and its attempts to mask the true extent of this failure in its public reporting, there is a clear "divergence of interest" between the State Defendants and Proposed Intervenors.  *Cotter*, 219 F.3d at 35-36. In short, Proposed Intervenors have good reason to be concerned about the vigor with which State Defendants will defend this lawsuit.

Proposed Intervenors' concerns about the adequacy of Defendants' representation are heightened even further by Defendants' response to Plaintiffs' preliminary injunction motion.  *See* ECF No. 15.  In the face of the motion, Defendants immediately delayed the planned timeline for

---

[21] *See* Chris Burrell & Paul Singer, *The Color Of Public Money: Black Businesses' Share Of Public Contracts Has Declined Over 20 Years*, GBH NEWS (January 13, 2020), https://www.wgbh.org/news/local-news/2020/01/13/the-color-of-public-money-black-businesses-share-of-public-contracts-has-declined-over-20-years.

[22] *See* Chris Burrell, *Out Of A $4.8 Billion Budget, Mass. Spent Less Than $25 Million With Black And Hispanic Firms Last Year,* GBH NEWS (September 16, 2021), https://www.wgbh.org/news/local-news/2021/09/16/out-of-a-4-8-billion-budget-mass-spent-less-than-25-million-with-black-and-hispanic-firms-last-year.

[23] Paul Singer, *Baker Administration Inflates Its Claim Of Spending With Minority Businesses,* GBH NEWS (September 8, 2020) https://www.wgbh.org/news/local-news/2020/09/08/baker-administration-inflates-its-claim-of-spending-with-minority-businesses.

grant distribution, and entered into a Joint Stipulation and Motion to Stay Proceedings with the Plaintiffs, filed days later on June 16, 2023. *See* ECF No. 22. In the Joint Stipulation, Defendants state that they "intend[] to conduct a review of the criteria for applying for and/or receiving a grant under the Inclusive Recovery Grant Program before it authorizes MGCC to release any funding decisions." *See* ECF No. 22 at 2. Particularly given that the Legislature has been clear about the grant criteria, and Plaintiffs do not challenge the state law itself, it is of grave concern to Proposed Intervenors that Defendants have already agreed to delay disbursing grants while it engages in this "review." *See Mosbacher*, 966 F.2d at 44 ("evidence that parties are 'sleeping on their oars' or 'settlement talks are underway' may be enough to show inadequacy). The commitment to unilaterally review criteria mandated by the Legislature rightfully heightens concerns from Proposed Intervenors about the adequacy of Defendants' representation.[24] For the reasons stated above, Proposed Intervenors meet the fourth requirement for intervention as of right: they have shown that their interests may not be adequately defended by Defendants in this action.

## II.    Alternatively, the Court Should Grant Permissive Intervention

Should the Court decline intervention as of right, Proposed Intervenors request that the Court exercise its discretion to permit intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). That Rule permits courts to allow a party to intervene who "has a claim or defense

---

[24] This is particularly troubling in light of the obvious standing problem that Plaintiffs face. Of the many categories of businesses that the Legislature focused on through the Grant Program, Plaintiffs challenge only three: minority-, women- and LGBTQ-owned businesses. Yet Plaintiffs attest that they do not meet *any* of the eligibility categories (*i.e.*, they are not businesses that focus on reaching underserved markets, veteran-owned businesses, or immigrant and first generation owned businesses). *See* ECF 17 (Dalton Declaration) at ¶ 6; ECF 18 (Troisi Declaration) at ¶ 5. Therefore, even if the challenged categories were removed, Plaintiffs would still not be eligible to apply for the Grant Program. *See Lujan v. Defenders of Wildlife, et al.*, 504 U.S. 555, 560-61 (1992) ("irreducible constitutional minimum" of standing requires injury and redressability). The State Defendants' delay and "review" is all the more problematic in light of this and other fundamental flaws in Plaintiffs' case.

that shares with the main action a common question of law or fact." In exercising that discretion, "the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts can "consider almost any factor rationally relevant" and enjoy "very broad discretion." *Daggett*, 172 F.3d at 113. One such factor is whether "the applicants may be helpful in fully developing the case." *Id.*

Proposed Intervenors meet the two requirements stated in the rule. Any claim or defense of Proposed Intervenors would be shared with the common question of law in this case, *i.e.*, whether the grant criteria violate Equal Protection. The litigation is in its early stages and is currently in a 60 day administrative stay, so intervention will not cause any undue delay and will not prejudice the parties' rights. Additionally, as representatives of one of the groups that the Legislature expressly targeted for inclusion in the Grant Program, Proposed Intervenors can assist the Court in understanding the need for such a focus. The perspective of minority-owned businesses should be represented in this litigation.

## CONCLUSION

For the foregoing reasons, the Proposed Intervenors respectfully request that the Court grant their Motion for Leave to Intervene and allow them to intervene as of right in this matter pursuant to Rule 24(a), or, alternatively that the Court exercise its discretion to permit them to intervene pursuant to Rule 24(b).

Dated: July 25, 2023                                    Respectfully submitted,

/s/  *Tasheena M. Davis*
Tasheena M. Davis, Esq. (BBO #695187)
Oren M. Sellstrom, Esq. (BBO #569045)
Lawyers for Civil Rights
61 Batterymarch St., 5th fl.
Boston, MA 02110
Tel: 857-264-0416
tdavis@lawyersforcivilrights.org
osellstrom@lawyersforcivilrights.org

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

The undersigned counsel for Proposed Intervenors hereby certifies that they have conferred with counsel for the Plaintiffs and Defendants by email on July 13, 2023 to narrow or resolve the issues raised in the motion, specifically relating to the request to intervene in this matter. Plaintiffs have indicated that they oppose this motion. Defendants have not taken a position on the motion.


Dated: July 25, 2023                                    /s/    *Tasheena M. Davis*


## CERTIFICATION OF SERVICE

I hereby certify that, on July 25, 2023, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by email to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


Dated: July 25, 2023                                    /s/    *Tasheena M. Davis*